IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DAVID THOMPSON,

    Petitioner,

v.                                                    **CIVIL ACTION NO. 1:03CV195**

AL HAYNES, Warden,

    Respondent.

## MEMORANDUM OPINION AND ORDER DISMISSING PETITION

Pro se petitioner, David Thompson ("Thompson"), an inmate at FCI Morgantown, brings this petition pursuant to 28 U.S.C. § 2241, challenging the policies of the Federal Bureau of Prisons ("BOP") regarding 18 U.S.C. § 3624(b), the good conduct statute.

On October 14, 2004, Magistrate Judge John S. Kaull filed a Report and Recommendation denying Thompson's motions for summary judgment, a preliminary injunction and declaratory judgment, and recommending that Thompson's petition be denied and dismissed with prejudice. Subsequently, Thompson objected to the Magistrate's findings.

For the following reasons, this Court **AFFIRMS** the Magistrate's recommendation and **DISMISSES WITH PREJUDICE** Thompson's petition.

### I. INTRODUCTION

On August 1, 2001, Thompson was convicted in the Eastern District of North Carolina of conspiracy to possess with the intent to distribute cocaine and sentenced to 72 months of imprisonment with credit for time served during pre-trial custody. The BOP has determined that Thompson's full sentence expires on January 17,

2007, six years from his first day in custody. It also has projected a release date of April 9, 2006, which accounts for 282 days of good time credit calculated by the BOP pursuant to its authority under section 3624(b) of Title 18 of the United States Code. This section provides as follows:

> (b) Credit toward service of sentence for satisfactory behavior.
> (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations . . . Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

The BOP interprets the phrase "term of imprisonment" to mean the time a defendant actually serves on his sentence, not the full term of incarceration imposed at sentencing. Its policy is to award inmates 54 days of good conduct time ("GCT") for each year actually served and to prorate the amount of GCT for the last partial year, calculating GCT using a formula that recognizes that an inmate's "time actually served becomes incrementally shorter

2

each year as he is awarded GCT." O'Donald v. Johns, 402 F.3d 172, 2005 U.S. App. LEXIS 4618, *3-4 (3d Cir. 2005) (per curiam) (citing White v. Scibana, 390 F.3d 997, 999-1000 (7th Cir. 2004)). See 28 C.F.R. §523.20; BOP Program Statement 5880.28, Sentence Computation Manual CCCA.

Thompson argues that the BOP's interpretation of § 3624(b) is unreasonable and represents an impermissible expansion of the authority delegated to it under the statute. According to him, "term of imprisonment" is an unambiguous phrase that clearly refers to the sentence imposed. He seeks to enjoin the BOP from applying its policy to him, and an order compelling it to give him full GCT credit pursuant to his interpretation of § 3624(b). Moreover, if this Court finds that 18 U.S.C. §3624(b) is ambiguous, he urges it to apply the rule of lenity. He believes he is entitled to a projected release date of February 26, 2006, accounting for 324 days of GCT.[1]

## II. DISCUSSION

This Court agrees with the majority of courts, including the First, Third, Seventh and Ninth Circuits, that the phrase "term of imprisonment," as used in § 3624(b), is ambiguous and the BOP's

---

[1] He calculated this release date by multiplying 54 days by 6 years, to arrive at 324 days of GCT.

interpretation of it is reasonable. See O'Donald, 402 F.3d 172, 2005 U.S. App. LEXIS 4618; Perez-Olivo v. Chavez, 394 F.3d 45 (1st Cir. 2005); White v. Scibana, 390 F.3d 997 (7th Cir. 2004); Pacheco-Camacho v. Hood, 272 F.3d 1266 (9th Cir. 2001).

A.  **STATUTORY INTERPRETATION**

   1. **Legal Analysis**

   If the intent of Congress is clear on the face of a statute, effect must be given to that intent regardless of the interpretation given to the statute by the agency charged with its enforcement. Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). When analyzing a statute, to determine the intent of Congress, one must always begin by looking to its language. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). If a statute's language is clear and unambiguous, it is unnecessary to consult other aids to statutory construction. Maryland St. Dep't of Educ., Div. of Rehabilitation Servs. v. United States Dep't of Veterans Affairs, 98 F.3d 165 (4th Cir. 1996).

   Although "identical words used in different parts of the same act are intended to have the same meaning," Sorenson v. Secretary

of Treasury, 475 U.S. 851, 860 (1986), when courts interpret a statute, they "do not construe the meaning of statutory terms in a vacuum; instead terms are interpreted 'in their context and with a view to their place in the overall statutory scheme.'" Tyler v. Cain, 533 U.S. 656, 662 (2001) (quoting Davis v. Michigan Dep't. of Treasury, 489 U.S. 803, 809 (1989)).

When a statute contains unclear language, courts may resort to legislative history to ascertain its meaning. Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102 (1980). The probative value of statements made by a legislator after the enactment of a statute, however, is limited. White, 314 F. Supp. 2d at 840 (citing Sullivan v. Finklestein, 496 U.S. 617, 628 n.8 (1990)).

**2. Plain Meaning**

The phrase "term of imprisonment" is mentioned four times in § 3624(b) and is not defined by the statute:

> [A prisoner who is] serving a *term of imprisonment* of more than 1 year other than a *term of imprisonment* for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's *term of imprisonment*, beginning at the end of the first year of the term, subject to the determination by the [BOP] that, during that

> year, the prisoner has displayed exemplary compliance . . . Credit for the last year or portion of a year of the *term of imprisonment* shall be prorated and credited within the last six weeks of the sentence.

Whether the phrase refers to the sentence imposed or the actual time served is unclear.

The first two references to the phrase—"a prisoner serving a *term of imprisonment* of more than 1 year other than a *term of imprisonment* for the duration of the prisoner's life"—clearly support a finding that "term of imprisonment" means "sentence imposed." The final two references, however, which allow prisoners to receive "up to 54 days at the end of each year of the prisoner's *term of imprisonment*" and "credit for the last year or portion of a year of the *term of imprisonment*," support a finding that the phrase means "actual sentence served." Otherwise, a prisoner may receive credit for good conduct in prison for a year when he is not actually incarcerated. Thus, Congress's intent is not clear on the face of the statute, and the Court finds it is necessary to examine the legislative history to determine that intent.

3. Legislative History

   a. Comprehensive Crime Control Act

Section 3624(b) is part of the Comprehensive Crime Control Act ("CCCA") enacted by Congress in 1984. Pub. L. No. 98-473, 98 Stat. 1837 (1984) (codified as amended in scattered sections of 18, 21, 28, 31, and 42 U.S.C.). See Perez-Olivo, 394 F.3d at 50. This statute repealed an earlier GCT statute, which applied different rates of GCT for different lengths of sentences and allowed prison officials to withhold or restore credits depending on an inmate's subsequent behavior. Id. Section 3624(b), however, provides all prisoners with the same potential to earn GCT each year, so long as they comply with the BOP's disciplinary regulations. Congress implemented these changes to simplify the calculation of GCT, decrease the prisoner's uncertainty regarding his release date, and promote administrative efficiency. S. Rep. 98-224, at 146 (1984), reprinted in 1984 U.S.C.C.A.C. 312, 3329-30. See Perez-Olivo, 394 F.3d at 50.

According to Thompson, the BOP's method of calculating GCT is unreasonable because it confuses, rather than providing certainty for, inmates. He asserts that multiplying 54 days by each year of the sentence imposed is the only reasonable form of computing GCT.

Nevertheless, Congress did not include a method of calculation for GCT in the CCCA. Further, § 3624(b) grants the BOP discretion to award GCT at the *end of each year* of the prisoner's term of imprisonment based on the prisoner's conduct during that year. It also contains proration language, indicating that Congress did not intend prisoners to multiply 54 days by a specific number of years to calculate their GCT. Moreover, although the statute repeals the earlier GCT statute in order to simplify GCT computations, by no longer applying different GCT rates for prisoners with different lengths of sentences, it also supports the equal treatment of prisoners, regardless of the sentence initially imposed upon them. Thus, this Court agrees with the Ninth Circuit's statement that

> if Congress's sole goal had been simplicity, it could have chosen not to award any good time credits during the last year of imprisonment (as it does for sentences of a year or less), or to award the full fifty-four days regardless of whether or not the prisoner serves the full year in prison. Instead, Congress chose to tolerate the additional complexity in order to arrive at a more equitable result. Far from mandating [Thompson's] interpretation, congressional desire to strike a balance between simplicity and fairness, as evidenced by legislative history, lends additional support to the BOP's regulation.

Pacheco, 272 F. 3d at 1269-70.

### b.  Senator Biden's Statements

Thompson next relies on statements made by Senator Biden of Delaware, in 1995, in support of a 1994 Democratic crime bill, in which he urged states to keep prisoners incarcerated for 85% of the sentence imposed. Thompson argues that those statements support his contention that Congress intended inmates to receive GCT for 15% of their total sentence.[2] Senator Biden's comments, however, came well after the 1984 enactment of § 3624 and do not address § 3624(b) or the calculation of GCT. Moreover, the statute itself references no requirement that inmates serve only 85% of their sentences. Thus, Senator Biden's statements have no probative value with regard to the intent of Congress in passing § 3624, and the phrase "term of imprisonment" remains ambiguous. Accordingly, this Court will now determine whether deference is due to the BOP's disputed policy.

---

[2] Senator Biden stated as follows:
When you get sentenced, you go to jail for the totality of that term. I was the coauthor of that bill. In the Federal courts, if a judge says you are going to go to prison for 10 years, you know you are going to go to prison for at least 85 percent of that time-8.5 years, which is what the law mandates. You can get up to 1.5 years in good time credits, but that is all. And we abolished parole. So you know you'll be in prison for at least 8.5 years. 141 Cong. Rec. S2348-01, 1995 WL 50344 (Cong.Rec.)

B. **REVIEW OF AGENCY POLICY**

   **1. Legal Analysis**

   If a statute is ambiguous, agency regulations that are legislative are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844 (regulation is legislative if "Congress has explicitly left a gap for the agency to fill"). Agency interpretations of statutes that have not been subjected to the rigors of notice and comment rulemaking, however, are not entitled to "Chevron-style" deference; they are, however, "entitled to respect" to the extent that they have the "power to persuade." Cunningham v. Scibana, 259 F.3d 303 (4th Cir. 2001); see Skidmore v. Swift & Co., 323 U.S. 34, 140 (1944). These interpretive policies are given "'considerable weight,' and should be upheld if they implement the congressional mandate in a reasonable manner." Pelissero v. Thompson, 170 F.3d 442, 446 (4th Cir. 1999).

   An interpretive rule "simply states what [the BOP] thinks the statute means, and only reminds affected parties of existing duties." Virginia Dep't of Educ. v. Riley, 86 F.3d 1337, 1347 (4th Cir. 1996). A legislative rule, by contrast, "intends to create

new law, rights or duties [and], [u]nlike interpretive rules [has] the force of law." Id.

### 2. The BOP's Policy

The BOP's policy regarding the calculation of GCT under § 3624(b) is an interpretive rule because it does not change the law, but attempts to implement a pre-existing law. Accordingly, it should be upheld if it implements the intent of Congress in a "reasonable manner." Pelissero, 170 F.3d at 446.

Although the phrase "term of imprisonment" may be interpreted differently each time it appears in § 3624(b), when analyzing the statute as a whole, it is obvious that the only reasonable definition of the phrase with regard to the calculation of GCT is "actual sentence served."

If GCT is based on the sentence imposed, inmates may receive good conduct credit for years when they are not in prison. This result does not support the Congressional objective of restoring equality among prisoners regardless of the sentence imposed and, significantly, divests the BOP of its discretionary power to determine whether "the prisoner has displayed exemplary compliance with institutional disciplinary regulations" prior to awarding GCT credit for a given year. The requirement of Congress that a person

be awarded GCT "at the *end of each year* of his term of imprisonment, *beginning at the end of the first year* of that term," specifically enables the BOP to exercise this discretion. Accordingly, because the BOP's policy "comports with the language of the statute, effectuates the statutory design, establishes a 'fair prorating scheme,' enables inmates to calculate the time they must serve with reasonable certainty, and prevents certain inmates from earning GCT for time during which they were not incarcerated," it is a logical and reasonable interpretation of the statute and must be upheld. O'Donald, 402 F.3d 172, 2005 App. LEXIS at *6.

C.   **RULE OF LENITY**

Under the rule of lenity, "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." United States v. Bass, 404 U.S. 336, 348 (1971). In this case, however, the rule does not apply because § 3624 "is not, strictly speaking, a 'criminal' statute." Perez-Olivo, 394 F.3d at 53. Moreover, "the rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." Reno v. Koray, 515 U.S. 50, 65 (1995). It "does not foreclose deference to an administrative agency's reasonable interpretation of a statute." Perez-Olivo, 394 F.3d at 53-54 (citing Babbitt v. Sweet Home Chapter of Communities,

515 U.S. 687, 704 n.18 (1995)). Thus, even if the rule of lenity applied to the statute, because the BOP's interpretation of § 3624(b) is reasonable, the rule would not be relevant to the Court's analysis.

### III. CONCLUSION

Because the BOP's interpretation of 18 U.S.C. § 3624(b) is reasonable, and because the rule of lenity does not apply in this case, the Court **AFFIRMS** Magistrate Kaull's findings and **DISMISSES WITH PREJUDICE** Thompson's petition.

All other motions are **DENIED AS MOOT** in light of the Court's ruling.

It is so **ORDERED**.

The Clerk is directed to mail a certified copy of this Order to the petitioner, to counsel of record, and to Magistrate Judge Kaull.

Dated: April __29__, 2005.

_____
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE